IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELKIN VALLEY BAPTIST CHURCH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:23-cv-1798-NBF |
| | ) |
| PNC BANK, N.A., and | ) |
| F.N.B. CORPORATION, | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |

## SECOND AMENDED COMPLAINT

Elkin Valley Baptist Church ("EVBC") brings causes of action, against PNC Bank, N.A. for Violation of 13 Pa C.S. § 4A207(b)(2), and Negligence, and causes of action against F.N.B. Corporation for violation of 13 Pa. C.S. § 4A207(c)(2) and Negligence.  In support of its action, EVBC alleges the following:

## PARTIES

1. Plaintiff, Elkin Valley Baptist Church ("EVBC") is a religious Nonprofit Corporation formed under the laws of the State of North Carolina, with its principal office located at, 118 N. Elkin Dr., Elkin, NC 28621.

2. Defendant, PNC Bank, N.A. is a corporation, ("PNC") incorporated in the State of Pennsylvania, with its principal place of business at, the Tower at PNC Plaza, 300 5th Ave., Pittsburgh, PA 15222.

3. Defendant, F.N.B. Corporation, is a Corporation (FNB) incorporated in the State of Pennsylvania, with its principal place of business at, One North Shore Center, 12 Federal St. Pittsburgh, PA 15212.

**Unknown Anticipated Parties**

4. Defendant John Doe ("Individual Doe") is alleged herein under a fictitious name. Individual Doe's true name and capacity, whether individual, corporate, associate, or otherwise, is currently unknown to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that Individual Doe is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by Individual Doe's conduct. Once Individual Doe's true name and capacity are ascertained, Plaintiff will seek leave of the Court to amend this Complaint to add Individual Doe as a defendant, his or her true name and capacity, along with appropriate allegations and causes of action pertaining to Individual Doe's conduct.

5. Defendant XYZ Corporation ("Business Entity Doe") is alleged herein under a fictitious name. Business Entity Doe's true name and nature, whether corporate, partnership, sole proprietorship, or otherwise, is currently unknown to Plaintiff. Plaintiff is informed and believes, and on that basis alleges, that Business Entity Doe is legally responsible in some manner for the events and caused injuries and damages to Plaintiff as alleged herein. Once Business Entity Doe's true nature and identity are determined, Plaintiff will seek leave of the Court to add Business Entity Doe as a defendant to this Complaint and allege

Business Entity Doe's true name and nature, along with pertinent details concerning Business Entity Doe's role and liability and causes of action in the matters at issue.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the action under 28 U.S.C. § 1332, because it involves citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391, because Defendant, PNC, and Defendant FNB are each incorporated in Pennsylvania or has its principal place of business in Pittsburgh, PA.

## GENERAL ALLEGATIONS

8. At some time prior to November 7th, 2022, Individual Doe opened an account in the name of Business Entity Doe at an unknown location with PNC, at which time PNC assigned Business Entity Doe with an account identified as # 5387108034 (the "**Account**").

9. The Account was either in a name other than "Landmark Builders Inc." (which was different than the name on the wire approval) or was in the name of "Landmark Builders Inc." (in which case it must have been opened fraudulently and in a way that would have been caught had reasonable diligence been used by PNC in opening the account).

10. Upon information and belief and based on the facts known and knowable to date, Business Entity Doe did not legally exist under the laws of any jurisdiction and was not an authorized recipient of funds on behalf of Landmark Builders Inc.

11. Upon information and belief and based on the facts known and knowable to date, Individual Doe had no authority and no records authorizing him to open an account in the name of Business Entity Doe and Individual Doe was not a Beneficial Owner.

12. There were no jurisdictional records evidencing the existence of Business Entity Doe in any jurisdiction.

13. PNC requires new business customers to provide certain personal identity and corporate documentation documents (the "Documents") when opening an account.

14. The Documents required are part of a formal Customer Identification Program, that requires them to identify and verify the identity of their customers in order to combat money laundering and other illegal activities.

15. The Documents go through a verification process, and PNC inquires as to the nature of the Businesses activities, the purpose of the accounts, anticipated type and the dollar value of financial transactions the customer is likely to engage in.

16. Upon receipt of the Documents, PNC requires the signatory on the account to physically appear to review and verify the Documents and the business accounts signatory's true identity.

17. Upon appearing at a branch of PNC, the business account manager at the local branch either (1) failed to realize that there were material discrepancies and irregularities in the Documents and/or (2) realized that there were discrepancies and irregularities in the Documents, but acted with deliberate indifference and assisted the fraudulent actor in opening the Account, because of the incentives PNC has in place for Account Managers to open business accounts.

18. Shortly after the Account Manager opened the account, PNC submitted the tax id number provided through the IRS's tax id matching program, which would have identified a mismatch in the tax identification numbers associated with opening the Account.

19. After the Account was opened, PNC engaged in ongoing monitoring of the Account by automated means, and it was identified as suspicious.

20. As part of the monitoring PNC automatically detects when transactions associated with the Account do not match with the anticipated type and dollar value of the financial transactions the Account was expected to engage in.

21. That occurred here as well, both before and after the fraud on Plaintiff was perfected through PNC's actions and/or inactions.

22. Upon detecting fraudulent activity, PNC was required to file Suspicious Activities Reports with the Financial Crimes Enforcement Network for the Account and conducted further enhanced due diligence of the Account, which further alerted PNC that the Account name was fraudulent and not associated with any legitimate business entity.

23. The issues identified in the IRS tax id matching program and automatic fraud detection alerts were received by PNC, however once PNC has established an account it failed to act.

24. It is believed that PNC has a practice of willful blindness and deliberate indifference to avoid the complexities and responsibilities associated with addressing such issues, to preserve transaction-related revenues from such suspicious accounts.

25. PNC knew there was no legally established business (let alone a business named "Landmark Builders Inc.") associated with the Account, and PNC therefore knew there was no name to associate with the Account.  Therefore, there could be no match between the name on any wire transfer into the Account and such a transfer should have been rejected.

26. Despite recognizing (or with reasonable diligence should have recognized) prior to November 7, 2022 the Account was fraudulent, PNC continued to leave the Account open and allowed EVBC to deposit funds into the Account despite knowing that there was no beneficiary associated with the Account.

27. Individual Doe provided fraudulent and/or misleading identification, which was (or with reasonable diligence should have been) detected by PNC's agents or employees.

28. Individual Doe and/or Business Entity Doe provided documentation to PNC purporting to authorize the opening of an account in the name of Business Entity Doe when such documentation was forged, fraudulent, and/or otherwise invalid and PNC knew, or with reasonable diligence consistent with its duties should have known, that the documentation was invalid to open any account, let alone an account in the name of "Landmark Builders Inc."

29. Around November 2022, EVBC was in the process of constructing a building, and had contracted with a legitimate entity, Landmark Builders, Inc. for construction.

30. At some time prior to November 7, 2022, Individual Doe, directly or through a third party, interacted with Plaintiff and caused Plaintiff to believe that Landmark Builders, Inc. was having issues with paper checks and needed to receive funds owed by Plaintiff via wire.

31. On or around November 7th, 2022, EVBC had $793,876.10 wired to PNC (the "**Wire**") for the benefit of Landmark Builders, Inc.

32. To receive the Wire, PNC required that EVBC provide it with: the beneficiary's name, the beneficiary's address and an account number.

33. In the Wire, EVBC identified the beneficiary's name as "Landmark Builders, Inc."

34. In the Wire, EVBC identified the beneficiary's address as "3250 Triad Court, Winston-Salem, NC 27107".

35. In the Wire, EVBC identified the beneficiary's account number as 5387108034.

36. PNC took custody of the $793,876.10 on or around November 7th, 2022.

37. The $793,876.10 was delivered by PNC to Business Entity Doe, instead of Landmark Builders, Inc.

38. The $793,876.10 was delivered by PNC to Business Entity Does, which was not located at 3250 Triad Court, Winston-Salem, NC 27107.

39. Under information and belief, the account number 5387108034, did not belong to Landmark Builders, Inc.

40. Under information and belief, the account number 5387108034 did not list an address as 3250 Triad Court, Winston-Salem, NC 27107.

41. PNC knew the account number did not match the beneficiary's name in the Wire.

42. PNC knew the account number on the Wire did not match the beneficiary's address on the Account.

43. Despite actual knowledge of the mismatch between the account number and beneficiary name and beneficiary address, PNC deposited the $793,876.10 into the Account.

44. PNC is defined as a "financial institution" or "financial services company" under federal regulations known as "Know Your Customer", and subject to those regulations ("KYC").

45. KYC requires that PNC establish proof of an account holder's legal identity.

46. KYC requires that PNC identify suspicious transactions and prevent fraud.

47. PNC failed to follow the rules and regulations or PNC's internal procedures for establishing proof of the holder of the Account as required by KYC.

48. PNC failed to follow the rules and regulations and/or PNC's internal procedures for identifying suspicious transactions for the Account.

49. PNC allowed the Account to be opened without following appropriate procedures for identifying the holder of the account in violation of KYC.

50. PNC failed to follow the rules and regulations and/or PNC's internal procedures for suspending withdrawals from accounts identified as suspicious.

51. PNC allowed all but $17,939.00 of the funds to be withdrawn from the Account by Individual Doe.

52. PNC remitted back to EVBC, the $17,939.00.

53. Upon information and belief, the Account withdrawals were made in whole or in part in person and therefore it is likely that there are security recordings of the withdrawals in the branch.

54. PNC knew, or with reasonable diligence should have known, that the transactions associated with the Account were suspicious.

55. PNC identified the Account as suspicious and knew the Account was not associated with a legitimate business entity at the time it deposited the transfer from EVBC into the Account.

56. PNC identified the Account as suspicious and knew the Account was not associated with a legitimate business entity when it permitted the withdrawal of the funds from the Account.

## First Cause of Action

## Violation of 13 Pa C.S. § 4A207(b)(2)

**(Defendant, PNC)**

57. EVBC hereby incorporates the preceding paragraphs as if set forth fully herein.

58. PNC received a payment order for the benefit of Landmark Builders, Inc. with account number 5387108034.

59. PNC did not have an account in the name of Landmark Builders, Inc. with account number 5387108034.

60. PNC had an account in the name of Business Entity Doe with account number 5387108034.

61. PNC knew that the account number 5387108034 was not associated with the name Landmark Builders, Inc, and was instead associated with Business Entity Doe.

62. EVBC had no obligations to Business Entity Doe, and Business Entity Doe had no rights as a beneficiary of the order.

63. Because PNC knew that name and number on the Wire identified different persons, no person had rights to the payment and acceptance could not occur.

64. Despite Knowing that account number 5387108034 was not associated with the name Landmark Builders, Inc., PNC paid Business Entity Doe.

65. EVBC was damaged by the loss of $775,937.10.

## Second Cause of Action

### Negligence

### (Defendant, PNC)

66. EVBC hereby incorporates the preceding paragraphs as if set forth fully herein.

67. PNC owed a duty of care to EVBC in the state in which Individual Doe opened the Account in the name of Business Entity Doe.

68. PNC breached its duty of care to EVBC by failing to adhere to the requirements of KYC or adhering to internal policies and permitting a fraudulent account to be opened.

69. By violating KYC, PNC proximately caused damage to EVBC and is negligent per se.

70. By PNC transferring the money to an account opened without adhering to KYC and internal policies PNC proximately caused EVBC to be damaged in an amount of not less than $ 775,937.10.

71. PNC had a duty to follow KYC rules and regulations.

72. The purpose of KYC rules and regulations is to prevent fraud.

73. PNC failed to follow the KYC rules and regulations related to the Account.

74. But for PNC's failure to follow KYC rules and regulations Individual Doe would have been prevented from absconding with $775,937.10 which was not intended for it.

75. PNC further owed a duty of care to EVBC in the state in which Individual Doe withdrew the funds from the Account.

76. PNC identified the Account as suspicious prior to the withdrawal of funds by Individual Doe.

77. The wire by EVBC is what caused PNC to identify the Account as suspicious.

78. PNC was on notice that EVBC's wire had been obtained by fraudulent means, and that EVBC would be harmed if PNC permitted withdrawal of the funds.

79. PNC benefitted from the wire by receiving consideration in the form of wire transfer fees.

80. EVBC was damaged by the loss of $775,937.10.

## Third Cause of Action

**(Failure To Warn / Violation of 13 Pa. C.S. § 4A207(c)(2))**

**(Defendant FNB)**

-10-

81. EVBC hereby incorporates the preceding paragraphs as if set forth fully herein.

82. FNB requires that wire instructions sent to it identify the Beneficiary by name and address.

83. In requiring EVBC to identify the beneficiary by name, FNB implied that if the name on the account did not match the account number, the payment of $793,876.10 would not deposited to the account and would instead be returned to EVBC.

84. FNB should know that by requiring the name for the account holder that EVBC would believe that the name and account number must match.

85. EVBC justifiably sent the Wire believing that if the name did not match the account number the $793,876.10 would be returned.

86. EVBC had no obligations to Business Entity Doe, and Business Entity Doe had no rights as a beneficiary of the order.

87. EVBC was not notified by FNB that PNC might pay the funds based on the basis of the account number even if the account number did not match Landmark Builder's, Inc.

88. But for the implicit promise that verification that the account number matches the name, EVBC would not have sent the $793,876.10.

89. EVBC was damaged by the loss of $775,937.10.

### Fourth Cause of Action

### (Negligence)

### (Defendant FNB)

90. EVBC hereby incorporates the preceding paragraphs as if set forth fully herein.

91. FNB has a duty to EVBC to verify that wire transfers are sent only in compliance with the instructions contained in the wire transfer or to provide reasonable systems of verification to ensure transfers from customer's accounts reach only the intended, named beneficiary.

92. A verification system is available or could be easily implemented, which would reduce the instances of fraudulent and mistaken transfers.

93. FNB breached its duty of care to EVBC by failing to verify the identity of the beneficiary account name was the same as that in the wire instructions, or implementing a system which would verify matching of account names and numbers.

94. FNB's breach proximately caused damage to EVBC.

95. EVBC was damaged by the loss of $775,937.10.

### Jury Trial Demand

Plaintiff demands a trial by jury on all issues so triable.

### Request for Relief

WHEREFORE, Plaintiff, Elkin Valley Baptist Church respectfully prays for the following orders from the Court:

A. A declaration that PNC Financial Services Group, Inc is liable to Plaintiff for $775,937.10 as alleged herein, together with prejudgment and post-judgment interest at the legal rate from November 7th, 2022 until paid,

-13-

B. A declaration that F.N.B. Corporation, Inc is liable to Plaintiff for $775,937.10 as alleged herein, together with prejudgment and post-judgment interest at the legal rate from November 7th, 2022 until paid,

C. For damages in the sum of $775,937.10,

D. For punitive damages,

E. For costs of the suit incurred herein including reasonable attorneys' fees as permitted by law, and

F. For such other and further relief as the Court may deem just.

Dated April 26, 2024               The Bartos Group, LLC


                                   By:___/s/ Todd Bartos_____

                                   Todd Bartos
                                   Attorney for Plaintiff
                                   Elkin Valley Baptist Church