**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELKIN VALLEY BAPTIST CHURCH, | |
| Plaintiff, | Civil Action No. 2:23-CV-1798 |
| v. | Honorable Nora B. Fischer |
| PNC BANK, N.A., and F.N.B. CORPORATION., | |
| Defendants, | |

**<u>DEFENDANT PNC BANK, N.A.'S MEMORANDUM IN SUPPORT OF
THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   PROCEDURAL HISTORY..........................................................................................2

III.  FACTUAL BACKGROUND........................................................................................3

IV.   LEGAL STANDARD...................................................................................................4

V.    ARGUMENT.................................................................................................................4

     A.   Plaintiff's Common Law Claim for Negligence is Preempted by the
          UCC. .....................................................................................................................5

     B.   To the extent that the Common Law Claim in the SAC is not
          Preempted by the UCC, it Still Fails as a Matter of Law. ......................................7

     C.   Plaintiff's UCC Claim Fails as a Matter of Law. ..................................................9

          1.   Plaintiff's Claim is Barred because it is not in Privity with PNC.............10
          2.   The UCC Allocates this Loss to the Plaintiff as the Authorized
              Sender. ....................................................................................................11
          3.   Plaintiff Cannot Shift Liability to PNC for its Loss with
              Conclusory Allegations.............................................................................11

VI.   CONCLUSION.............................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Sogliuzzo*,
625 Fed. App'x 565 (3d Cir. 2015)...................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................4

*Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*,
53 F. Supp. 3d 810 (D.S.C. 2014)....................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 522 (2007)...........................................................................................................4

*Breckenridge v. Blackhawk Recovery & Investigation, LLC*,
No. 18-10787, 2018 WL 4829305 (E.D. Mich. Oct. 8, 2018)...........................13, 14

*Chemalloy Company, LLC v. Citibank, N.A.*,
609 F. Supp. 3d 370 (E.D. Pa. 2022)..............................................................................7

*Commerce Bank v. First Union Nat'l Bank*,
911 A.2d 133 (Pa. Super. Ct. 2006)................................................................................8

*Dupin v. J.P. Morgan Chase Bank, N.A.*,
No. 23-2990, 2023 WL 6976889 (E.D. La. Oct. 23, 2023).......................................8, 9

*Eburoh v. PNC Bank, N.A.*,
No. 21-4430, 2022 WL 2176305 (E.D. Pa. June 16, 2022).........................................6

*Eisenberg v. Wachovia Bank N.A.*,
301 F.3d 220 (4th Cir. 2002) ...........................................................................................8

*First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*,
215 F.3d 1147 (10th Cir. 2000) ......................................................................................12

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)..............................................................................................4

*Fragale v. Wells Fargo Bank, N.A.*,
480 F. Supp. 3d 653 (E.D. Pa. 2020) ..........................................................................7, 8

*Frankel-Ross v. Congregation OHR Hatalmud*,
No. 15-cv-6566, 2016 WL 4939074 (S.D.N.Y. Sept. 12, 2016) ...............................10, 13

*H.G. Litig. Grp., LLC v. TD Bank, N.A.*,
   598 F. Supp. 3d 249 (E.D. Pa. 2022) ...................................................................................7

*Harborview Cap. Partners, LLC v. Cross River Bank*,
   600 F. Supp. 3d 485 (D.N.J. 2022) ......................................................................................6

*James v. City of Wilkes Barre, et. Al.*,
   700 F.3d 675 (3d. Cir. 2012).................................................................................................4

*JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*,
   615 F. Supp. 3d 750 (M.D. Tenn. 2022)........................................................................13, 14

*Kirschner v. Wells Fargo Bank*,
   No. 21-10785, 2021 WL 5545957 (E.D. Mich. July 19, 2021)............................................12

*Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*,
   795 Fed. Appx. 741 (11th Cir. 2019)..................................................................................13

*Regional Produce Cooperative Corporation v. TD Bank, N.A.*,
   No. 19-1883, 2020 WL 1444888 (E.D. Pa. Mar. 24, 2020) ......................................................8

*Remtek Servs., Inc. v. Wells Fargo Bank, N.A.*,
   No. 19-12790, 2020 WL 241332 (D.N.J. Jan. 16, 2020).....................................................6, 12

*Serviacero Especiales SA DE CV v. JPMorgan Chase Bank N.A.*,
   No. EDCV 21-380 JGB, 2021 WL 4805448 (C.D. Cal. July 15, 2021)......................12, 13, 14

*United States v. PNC Bank*,
   No. 07-417, 2009 WL 10736701 (E.D. Pa. Mar. 31, 2009) ......................................................6

*Zhejiang Matrix SCM Co., LTD v. PNC Bank, Nat'l Ass'n*,
   No. CV 23-0979, 2024 WL 1096534 (E.D. Pa. Mar. 13, 2024)............................................10

**Statutes**

13 Pa. Cons. Stat. § 4A101, *et seq*. ..........................................................................................5

13 Pa. Cons. Stat. § 4A102 .........................................................................................................6

13 Pa. Cons. Stat. § 4A104 ......................................................................................................5, 6

13 Pa. Cons. Stat. § 4A202 .......................................................................................................11

13 Pa. Cons. Stat. § 4A207 ....................................................................................1, 2, 7, 11, 12

13 Pa. Cons. Stat. § 4A402 .......................................................................................................11

13 Pa. Cons. Stat. § 4A503 .......................................................................................................11

iii

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ..................................................................................................1, 2, 4

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant PNC Bank, National Association ("PNC"), files this Motion to Dismiss ("Motion") the Second Amended Complaint ("SAC") of Elkin Valley Baptist Church ("Plaintiff"), and in support thereof, states as follows:

## I.    INTRODUCTION

In its Second Amended Complaint, Plaintiff asserts it authorized a wire in the amount of $775,937.10 to be sent by its bank to a PNC account number.  Plaintiff later learned it was the victim of wire fraud. Now it seeks to recover the wired funds from the banks that processed its payment order instructions. Plaintiff brings two counts against PNC for alleged: (i) negligence; and (ii) violation of Article 4A of the Pennsylvania Uniform Commercial Code ("UCC"), codified at 13 Pa. Cons. Stat. § 4A207.

While PNC sympathizes with Plaintiff's plight, it is not liable for this alleged fraud under the relevant legal scheme. As a preliminary matter, Plaintiff's common law claim for negligence is preempted by the UCC and must be dismissed. Further, to the extent the common law claim is not preempted, Plaintiff's claim fails as a matter of law: Plaintiff cannot establish a prima facie case for negligence, as there is no duty owed to non-customers. As to the UCC claim, it also fails for multiple independent reasons.  Plaintiff was not in privity with PNC. PNC was merely a neutral payment processor in the transaction. It processed the wire instruction in accordance with federal law and regulations and in the exact same manner as it does the myriad other wire instructions it receives daily—through an automated process that reviews only the account number provided in the payment order, as is customary in the banking industry. Further, Plaintiff does not—and cannot—allege sufficient facts to support a plausible claim under 13 Pa. Cons. Stat. § 4A207.  As a result, Plaintiff's attempt to bring these two claims against PNC fails. Since allowing Plaintiff another amendment would be futile, dismissal with prejudice is warranted.

## II.    PROCEDURAL HISTORY

On October 18, 2023, Plaintiff filed this action against PNC asserting common law claims against PNC for (1) negligence, (2) negligent misrepresentation, (3) conversion, and (4) constructive trust. *See* Dkt. 1.  Plaintiff sought damages in the amount of $775,937.10 plus interest, punitive damages, costs, and fees. *Id.* Before PNC's deadline to respond to the Complaint, the parties conducted a meet and confer regarding a potential motion by PNC pursuant to Rule 12(b)(6) of the Federal Rules of Procedure. *See* Dkt. 13 ¶ 2. Plaintiff and PNC agreed that such a motion could potentially be avoided by the filing of an amendment, which would permit Plaintiff to revise its allegations and add additional defendants. *Id.* On January 16, 2023, Plaintiff and PNC filed a Stipulation for Amendment to Plaintiff's Complaint, permitting Plaintiff up through January 26, 2024 to file an amended pleading, and permitting PNC to respond within 14 days. *Id.* On January 26, 2024, Plaintiff filed the First Amended Complaint ("FAC"). Dkt. 15. On March 1, 2024, PNC filed a motion to dismiss. Dkt. 17. Plaintiff responded, in part, seeking amendment to cure any pleading defects. Dkt. 24. On April 12, 2024, this Court granted Plaintiff leave to amend. Dkt. 27.

On April 26, 2024, Plaintiff filed the Second Amended Complaint ("SAC"). Dkt. 28. The allegations against PNC did not substantively change. Plaintiff raises against PNC (1) violation of 13 Pa. Cons. Stat. § 4A207(b)(2), and (2) negligence. *See* Dkt. 28. Plaintiff also sues F.N.B. Corporation, alleging claims for failure to warn, violation of 13 Pa. Cons. Stat. § 4A207(c)(2), and negligence. *Id*. Plaintiff again seeks damages in the amount of $775,937.10 plus interest, punitive damages, costs, and fees. *Id.* Again, PNC and Plaintiff conducted a meet and confer regarding a potential motion by PNC pursuant to Rule 12(b)(6) of the Federal Rules of Procedure. Dkt. 16. As the parties have been unable to reach an agreement, PNC proceeds with this Motion.

### III.   FACTUAL BACKGROUND

In the SAC, Plaintiff alleges that on or around November 7, 2022, it authorized a wire transfer of $793,876.10 to a PNC account ending in -8034 (the "Account"). Dkt. 28 (hereinafter "SAC") ¶¶ 8, 31.[1]  Plaintiff further alleges the Account received the funds.  *Id.* ¶ 43.  However, after completion of the wire transfer, Plaintiff learned the Account was in fact not controlled by the construction company, Landmark Builders, Inc., to whom it meant to send the funds but instead by an unknown party that had defrauded Plaintiff.  *See id.* at ¶¶ 30, 37-39, 39-40.  By the time Plaintiff realized its own error of not providing the correct account number, the PNC accountholder had withdrawn a majority of the wired funds.  *Id.* ¶ 51.  PNC returned to Plaintiff the remaining amount of $17,939.00. *Id.* ¶ 52.

Plaintiff does not allege that PNC credited the wire transfer to the wrong account number identified in the wire transfer.  Rather, Plaintiff's main complaint is that PNC processed the wire even though the beneficiary's name and address on the Account did not match the beneficiary's name and address in Plaintiff's payment order.  *Id.* ¶¶ 31-35.  Plaintiff asserts, in conclusory fashion, that PNC knew of the mismatch between the account number and beneficiary name and address but still deposited $793,876.10 into the Account.  *Id.* ¶¶ 37-43.

The SAC, however, contains no factual allegations to indicate when, why, how, or through what circumstances PNC developed actual knowledge of the mismatch at the time of Plaintiff's wire transfer.  *See id.*  Rather, Plaintiff alleges that PNC is subject to federal regulations known as "Know Your Customer" ("KYC") for verification of account holder identification and prevention of fraud. *See id.* ¶¶ 44-46. Plaintiff alleges that PNC "failed to follow the rules and regulations or PNC's internal procedures for establishing proof of the holder

---

[1] The well-pled factual allegations in the SAC are taken as true for purposes of this Motion.

of the Account" and "identifying suspicious transactions for the Account" and for "suspending withdrawals from accounts identified as suspicious." *Id.* ¶¶ 47-48, 50. As a result of these alleged KYC obligations, Plaintiff concludes that "PNC knew, or with reasonable diligence should have known, that the transactions associated with the Account were suspicious." *Id.* ¶ 54.

### IV.    LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, the Court must accept the well-pleaded factual allegations as true but may "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes Barre, et. Al.*, 700 F.3d 675, 679 (3d. Cir. 2012). A pleading that offers mere labels or conclusions, or a formulaic recitation of the elements of a cause of action will not permit a plaintiff to avoid dismissal. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 522, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, a complaint is properly dismissed under Rule 12(b)(6) where the facts alleged fail to "raise a right to relief above the speculative level." *Twombly*, at 555. The complaint may not merely allege a plaintiff's entitlement to relief—it must "show such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). If no such facts exist that permit a court to find that a plaintiff could be entitled to relief on a claim, dismissal is warranted. *See id*.

### V.    ARGUMENT

The SAC fails to state a claim upon which relief can be granted. Indeed, each of Plaintiff's claims against PNC fails for multiple independent reasons, any one of which suffice to grant dismissal. First, Plaintiff's negligence claim is preempted by the UCC's comprehensive statutory scheme governing wire transfers. Second, to the extent the negligence claim is *not* preempted by the UCC, it fails as a matter of law in any event because PNC owed no duty to

Plaintiff.  Third, and finally, Plaintiff's UCC claim also fails for multiple independent reasons. Plaintiff is not in privity with PNC.  Moreover, the UCC expressly delegates the risk of loss in this scenario to the *sender.*  Moreover, the UCC claim also fails because Plaintiff has not—and, in truth, *cannot*—pled plausible factual allegations demonstrating PNC had actual knowledge regarding the recipient accountholder. Since any further amendment would be futile, the SAC should be dismissed with prejudice.

**A.    Plaintiff's Common Law Claim for Negligence is Preempted by the UCC.**

Plaintiff cannot bring a common law claim for negligence against PNC because Article 4A of the UCC, adopted at 13 Pa. Cons. Stat. § 4A101, *et seq.*, provides the exclusive rights, duties, and liabilities of banks and senders with respect to funds transfers.  "Funds transfer" is defined as the series of transactions that begins with the originator's payment order and are completed by acceptance by the beneficiary's bank of a payment order. 13 Pa. Cons. Stat. § 4A104(a).  In adopting the UCC, the Pennsylvania legislature was clear that where the UCC governs a particular topic (here, funds transfers), it preempts all contradictory common law causes of action related to that topic. The Official Comments to the UCC note that:

> In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment.  A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles.  In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately.  This consideration is particularly important given the very large amounts of money that are involved in funds transfers.

> Funds transfers involve competing interests--those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest.  These competing interests were represented in the drafting process and they were thoroughly considered.  The rules that emerged represent a careful and delicate balancing of those interests and

are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. **Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.**

*See* 13 Pa. Cons. Stat. § 4A102 (emphasis added).

There is no question that a funds transfer is at issue in Plaintiff's Complaint. *See* 13 Pa. Cons. Stat. § 4A104; *United States v. PNC Bank*, No. 07-417, 2009 WL 10736701, at *3 (E.D. Pa. Mar. 31, 2009) ("U.C.C. Article 4A . . . applies generally to wire transfers[.]"). Plaintiff admits the transaction at issue is a wire. SAC ¶ 31. Accordingly, Article 4A of the UCC, as adopted in Pennsylvania, governs this dispute and is the sole vehicle under which to bring any claim regarding a wire transfer. Plaintiff's attempt to bring a separate common law claim for negligence is thus preempted as a matter of law. Plaintiff cannot overcome the mountain of caselaw that supports preemption of its negligence claim. *See, e.g.*, *Eburoh v. PNC Bank, N.A.*, No. 21-4430, 2022 WL 2176305, at *2 (E.D. Pa. June 16, 2022) ("Article 4A preempts Eburuoh's claim because it supplies a comprehensive remedy for disputes involving wire transfers.") (collecting authority); *Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 496 (D.N.J. 2022) (dismissing common law claims for negligence and negligent misrepresentation where the plaintiff's claims were derived from a fraudulent wire transfer scheme); *Atl. Energy Grp., Ltd. v. Ne. Direct Corp.*, 53 F. Supp. 3d 810, 814 (D.S.C. 2014) (finding that plaintiff's negligence and breach of fiduciary duty claims were preempted by the UCC); *See Remtek Servs., Inc. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 WL 241332, at *3 (D.N.J. Jan. 16, 2020) ("[C]ourts have repeatedly held that Article 4A preempts negligence

6

claims where the bank processed a payment order despite the existence of a discrepancy between the beneficiary identified on the payment order and the name on the account").[2]

To permit Plaintiff's common law claim to proceed in conjunction with Plaintiff's UCC claim under § 4A207 would thwart the purposes of the UCC's comprehensive and exclusive statutory scheme for Plaintiff's purported injuries. As a result, dismissal with prejudice is warranted.

### B.    To the extent that the Common Law Claim in the SAC is not Preempted by the UCC, it Still Fails as a Matter of Law.

Even assuming *arguendo* that Plaintiff's negligence claim is not preempted by the UCC (which it is), it nevertheless fails as a matter of law.  Under Pennsylvania common law, "[i]t is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage."  *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 660 (E.D. Pa. 2020) (citing *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575-76 (Pa. Super. Ct. 2006)).

Here, Plaintiff cannot establish the essential threshold element of duty to establish a cause of action rooted in negligence. Plaintiff is not—and does not claim to be—a PNC customer. This dooms Plaintiff's claim. It is well settled law that "banks do not owe *any* duty of care to noncustomers and/or third parties." *Chemalloy Company, LLC v. Citibank, N.A.*, 609 F. Supp. 3d

---

[2] In prior briefing, Plaintiff suggested its negligence claim is not preempted under the reasoning set forth in *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 660 (E.D. Pa. 2020).  As PNC previously explained, *Fragale* is widely recognized as limited to its facts and does not support bringing a negligence claim where the heart of the complaint is a wire transfer. *See, e.g.*, *H.G. Litig. Grp., LLC v. TD Bank, N.A.*, 598 F. Supp. 3d 249, 253 (E.D. Pa. 2022) ("*Fragale* has no bearing on the issue presented by this motion to dismiss, which is whether the Pennsylvania Commercial Code displaces a common law claim when the claim's alleged factual basis *does* fall squarely within the Code's scope.").

370, 377 (E.D. Pa. 2022) (dismissing negligence claims brought by a noncustomer as a matter of law for lack of duty despite bare allegations of duty related to improper opening of account, processing of wire transfer, or failure to return funds fraudulently procured by a customer) (emphasis added); *accord Adkins v. Sogliuzzo*, 625 Fed. App'x 565, 569 (3d Cir. 2015) ("Absent a special relationship, courts will typically bar claims of non-customers against banks."). "[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe any duty of care to noncustomers and/or third parties." *Fragale*, 480 F. Supp. 3d at 661 (dismissing complaint in its entirety for plaintiff's failure to identify a cognizable duty of care on behalf of a bank to a noncustomer); *Eisenberg v. Wachovia Bank N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship."); *Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. Ct. 2006) (holding a bank does not have a duty to act against a client's bank account when the bank suspects fraud to protect a third-party bank from future similar fraudulent conduct). Plaintiff pleads no facts or circumstances to indicate it is either a customer of PNC or that any special duty exists between the two parties. As such, the SAC does not support a finding of duty with respect to PNC.

Plaintiff alleges that a duty arises out of PNC's obligations under KYC regulations. SAC ¶ 71. However, Pennsylvania accords with nearly every jurisdiction in the United States in holding that KYC regulations do ***not*** provide a private right of action or corresponding duty of care to private plaintiffs. *See Regional Produce Cooperative Corporation v. TD Bank, N.A.*, No. 19-1883, 2020 WL 1444888, at *11 (E.D. Pa. Mar. 24, 2020) (citing cases); *Dupin v. J.P. Morgan Chase Bank, N.A.*, No. 23-2990, 2023 WL 6976889, at *5 (E.D. La. Oct. 23, 2023) (dismissing negligence claims for lack of duty on behalf of defendant bank). In *Dupin*,

noncustomer plaintiffs alleged a duty of care based on the "bank's violation of its own rules and regulations set forth in the Know Your Customer clause." *Id.* at *2. The defendant bank responded that it was under no obligation to protect noncustomers from fraudulent activities of its customers and the bank's required compliance with "federally-mandated customer identification provisions . . . does not equate to an assumption of duty to protect all non-customers from fraud." *Id.* Agreeing with the bank, the court held that a KYC clause "merely manifest[ed] [the bank's] intention to comply with federal law . . . [and did not operate as] an assumption of an unspecified duty to third parties." *Id.* (citing *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6-7 (N.D. Cal. Aug. 1, 2019) (collecting other cases holding that there is no private right of action under the Bank Secrecy Act and no duty arising out of its monitoring requirements). Accordingly, despite Plaintiff's references to PNC's KYC obligations in the SAC, there is no cognizable duty of care owed to Plaintiff under these regulations. As such, the SAC fails to provide a valid or cognizable basis from which this Court can determine the existence of a duty as a matter of law.[3]

In sum, Plaintiff cannot establish the threshold duty element to state a negligence claim. Thus, the negligence claim should be dismissed with prejudice as amendment would be futile.

C.      **Plaintiff's UCC Claim Fails as a Matter of Law.**

Plaintiff's remaining cause of action under the UCC also fails as a matter of law for three reasons: (1) Plaintiff is not in privity with PNC; (2) the UCC allocates the loss to Plaintiff; and (3) Plaintiff has failed to plausibly state a claim with sufficient factual allegations.

---

[3] In prior briefing, Plaintiff asserted this Court could not dismiss the negligence claim because a choice-of-law analysis is required.  As PNC previously explained, no choice-of-law analysis is necessary because the law of every relevant jurisdiction is in accord—and even if such an analysis is necessary, it does not preclude dismissal.  *See* Dkt. 24 at 5-6.

### 1.    Plaintiff's Claim is Barred because it is not in Privity with PNC.

Plaintiff's UCC claim also fails because it is not in privity with PNC. This fact is critical and other courts have deemed it sufficient to dismiss a claim. In fact, the Eastern District of Pennsylvania has reviewed this issue and agreed:

> Although this Court has not found any precedent from the Third Circuit or the Pennsylvania Supreme Court analyzing whether Section 4A incorporates a privity requirement, this Court finds persuasive the reasoning of other courts which have found a privity requirement exists. *See Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (holding that a party may only sue the bank with which it directly dealt because "[t]o allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer"); *see also Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank*, NA, No. 2:21-cv-12835, 2022 WL 16706948, at *3–6 (D.N.J. Oct. 3, 2022); *Approved Mortg. Corp. v. Truist Bank*, 638 F. Supp. 3d 941, 949–51 (S.D. Ind. 2022); *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020). **Because Plaintiff is neither a customer of Defendant nor in privity with Defendant, the Court finds any claim under Section 4A-207(b) against Defendant would necessarily fail.**

*Zhejiang Matrix SCM Co., LTD v. PNC Bank, Nat'l Ass'n*, No. CV 23-0979, 2024 WL 1096534, at *4 (E.D. Pa. Mar. 13, 2024) (emphasis added) (granting motion to dismiss with prejudice); *see also Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-cv-6566, 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016) (explaining that "even assuming that [recipient bank] knew that the face on the name of the payment order and the account order identified different persons, Frankel-Ross would not have a cause of action against [recipient bank]" because parties were not in privity).

As such, because the Complaint states that it is neither a customer of PNC nor in privity with PNC, Plaintiff's claim fails as a matter of law.

10

### 2. The UCC Allocates this Loss to the Plaintiff as the Authorized Sender.

Article 4A of the UCC directly governs the alleged incident at issue here and orders how loss is allocated in this situation—with the **sender.** *See* 13 Pa. Cons. Stat. § 4A202, 4A207, 4A402. Under the UCC's scheme for allocation of fault, because Plaintiff authorized the wire transfer, it bears the loss. 13 Pa. Cons. Stat. § 4A202(a) ("A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."); 13 Pa. Cons. Stat. § 4A402 ("With respect to a payment order issued to the beneficiary's bank, acceptance of the order by the bank obliges the sender to pay the bank the amount of the order, but payment is not due until the payment date of the order.").

Here, Plaintiff admits that the funds transfer to PNC was authorized to the PNC account number, and that PNC accepted the funds transfer. *See* SAC ¶¶ 31, 35, 36. Plaintiff does not allege that it recalled or stopped the wire transfer before acceptance. *See id*. Therefore, under the UCC, because Plaintiff authorized the payment order and PNC accepted the payment order, Plaintiff bears responsibility for this loss. As no injunction or restraining order was in place with respect to the wire, PNC had no obligation to prevent the account holder from accessing its account and funds. 13 Pa. Cons. Stat. § 4A503.

### 3. Plaintiff Cannot Shift Liability to PNC for its Loss with Conclusory Allegations.

Despite its authorization of the wire transfer, Plaintiff attempts to shift liability to PNC by arguing that it did not authorize a wire transfer to any entity other than "Landmark Builders, Inc." and this was not the entity that received the wire transfer. *See id*. ¶ 37. But this argument fails based on Plaintiff's own allegations: it provided the account number and admits this was the account that received the funds. *See id*. ¶¶ 35, 37.

11

Under the UCC, banks are permitted to rely exclusively on the account number provided to complete a wire transfer. *See* 13 Pa. Cons. Stat. § 4A207, cmt. 2 (describing the "standard format" by which a "very large percentage of payment orders issued to the beneficiary's bank by another bank are processed" automatically using "machines ... that identify the beneficiary by an identifying number or the number of a bank account" and explaining that "Beneficiary's Bank has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order"). It is well-settled that when processing a wire transfer, a beneficiary bank "has no duty to determine whether there is a conflict [between account name and account number]." 13 Pa. Cons. Stat. § 4A207, cmt. 2; *Remtek Services*, No. 19-12790, 2020 WL 241332, at *3; *Kirschner v. Wells Fargo Bank*, No. 21-10785, 2021 WL 5545957, at *2 n. 1 (E.D. Mich. July 19, 2021).

In the event of a misdescription or mismatch between account number and account name, a bank is granted immunity under the UCC, which specifically allows a bank to rely on the account number specified in the wire transfer even if the actual account name is different than the one described in the wire. *Remtek*, No. 19-12790, 2020 WL 241332, at *3; *Kirschner*, No. 21-10785, 2021 WL 5545957, at *2; *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1153 (10th Cir. 2000). A bank is only liable for a misdescription of an account name and number if it has "actual knowledge" of the fraudulent wire transfer at the time of processing. *Remtek*, No. 19-12790, 2020 WL 241332, at *3 (discussing an identical provision of the UCC).

To avoid a bank relying on this safe harbor protection in the UCC, a plaintiff must plead specific allegations demonstrating ***actual knowledge*** by the bank that a discrepancy existed between the account name and number on the transaction at the time of the transfer. *See Serviacero Especiales SA DE CV v. JPMorgan Chase Bank N.A.*, No. EDCV 21-380 JGB, 2021

12

WL 4805448, at *2 (C.D. Cal. July 15, 2021). "Actual knowledge" is not a pleading standard satisfied merely by inference or bald, conclusory, and unsupported assertions. A complaint that hinges on "bald assertion[s] that the name and number on the payment did not match," without more, is insufficient to find defendant had actual knowledge of mismatch. *Id.*; *see also JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 784 (M.D. Tenn. 2022) (concluding that equivocal allegations of "actual knowledge" are insufficient when "they are not supported by any factual matter in the [pleadings]"); *see also Breckenridge v. Blackhawk Recovery & Investigation, LLC*, No. 18-10787, 2018 WL 4829305, at *2-3 (E.D. Mich. Oct. 8, 2018) (concluding that "simply using the phrase 'actual knowledge' in a manner that mirrors the elements of a claim . . . is not sufficient to raise a plausible claim" under another statute with an actual knowledge exception). Put simply, threadbare allegations of actual knowledge, without a single fact in support of such a contention, cannot sustain this type of claim. *Serviacero*, No. EDCV 21-380 JGB, 2021 WL 4805448, at *2. (explaining dismissal is proper when plaintiff alleges no facts that actually demonstrate that defendant actually knew of the discrepancy beyond mere recitals of the element of actual knowledge). In fact, a bank will not be imputed with "actual knowledge" of the fraudulent nature of a wire transfer even when an automatic system identifies a potential mismatch, so long as no individual person had actual knowledge of the mismatch. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 Fed. Appx. 741, 747 (11th Cir. 2019) (refusing to hold a bank liable even when the automatic processing system identified a potential account name and number mismatch before processing the transfer); *Frankel-Ross*, 2016 WL 4939074, at *3 (holding actual knowledge not pled where plaintiff "alleges JPMCB had actual knowledge [of name and number mismatch] because suspicious

13

activity in this account would have caused JPMCB's anti-money laundering ('AML') system to flag this transaction").

Here, Plaintiff pleads only in conclusory fashion that "PNC knew the account number did not match the beneficiary's name in the wire" or the "beneficiary's address" and thus had "actual knowledge of the mismatch." SAC ¶¶ 41-43. Like the insufficient pleadings in *Serviacero*, *Breckenridge*, *JRS Partners*, and many other cases in this Circuit and elsewhere, Plaintiff does not provide any factual reference or allegation to show how PNC actually knew of such mismatch or discrepancy, other than a conclusory allegation that the name was incorrect at the time of transfer. *See id*.  This is far from sufficient to find a plausible inference of actual knowledge. Therefore, dismissal is warranted.  Moreover, amendment would be futile because Plaintiff *cannot* plead actual knowledge. PNC processed the wire transfer at issue by automatic means[4] relying only on the account number, which means it had no actual knowledge of any mismatch between the account number and beneficiary name.

## VI.    CONCLUSION

WHEREFORE, Defendant PNC Bank, N.A. respectfully requests the Court grant its Motion and dismiss the claims raised against PNC in Plaintiff's SAC. Dismissal with prejudice is appropriate as Plaintiff's claims against PNC cannot stand as a matter of law and no further amendment will rectify the deficiencies.

---

[4] Such information was disclosed to Plaintiff's counsel during meet and confers for the Complaint, FAC, and SAC. PNC has offered to provide Plaintiff's counsel with an affidavit to confirm the automated processing using only the account number provided and relevant documents subject to a protective order, but counsel refused to engage further.

Dated: May 10, 2024

Respectfully submitted,

/s/ *Alexander M. Madrid*
Alexander M. Madrid (PA ID No. 320028)
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  412 667 7919
F:  412 667 7950
amadrid@mcguirewoods.com

*Counsel for Defendant PNC Bank, N.A.*

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELKIN VALLEY BAPTIST CHURCH,<br><br>                    Plaintiff,<br>v.<br><br>PNC BANK, N.A., and<br>F.N.B. CORPORATION.,<br><br>                    Defendants, | Civil Action No. 2:23-CV-1798<br><br>Honorable Nora B. Fischer |

## <u>CERTIFICATE OF MEET AND CONFER</u>

Undersigned counsel certifies that all parties have, in good faith, met and conferred to reach agreement on the issues raised by this motion pursuant to Federal Rule of Civil Procedure 12 as required by this Court's Practices and Procedures.  Undersigned counsel certifies that the parties were unable to come to agreement on the issues raised by this motion.

*Alexander M. Madrid*
Alexander M. Madrid (PA ID No. 320028)
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222-3142
T:  412 667 7919
F:  412 667 7950
amadrid@mcguirewoods.com

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 10, 2024, a true and correct copy of the forgoing was filed with the Clerk of Court using the Court's ECF system, which will send notification of such filing to all counsel of record.

/s/ *Alexander M. Madrid*
Alexander M. Madrid

17