IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELKIN VALLEY BAPTIST CHURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PNC BANK, N.A. and ) | Civil Action No. 23-1798 |
| FIRST NATIONAL BANK OF ) | Judge Nora Barry Fischer |
| PENNSYLVANIA, ) | |
| ) | Docket No. 59 |
| Defendants. ) | |

**MEMORANDUM OPINION ON DEFENDANT PNC BANK, N.A.'S
MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Presently before the Court is Defendant PNC Bank, N.A. ("PNC")'s Motion (Docket No. 59) and Brief in Support (Docket No. 60) seeking to certify, for potential interlocutory review pursuant to 28 U.S.C. § 1292(b), this Court's September 10, 2024 Order denying PNC's Motion to Dismiss this action. *See* Docket Nos. 46 and 47 (Memorandum Opinion and Order).

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The factual background is set forth at length in the Court's Memorandum Opinion, *supra*. Plaintiff Elkin Valley Baptist Church ("EVBC") and Defendant First National Bank of Pennsylvania ("FNB") have filed briefs opposing PNC's certification Motion; PNC has filed its Reply; and Plaintiff has filed a Sur-reply. (Docket Nos. 66, 67, 70, 71). Said Motion is therefore ripe for disposition and, for the reasons that follow, will be denied.

## II.     APPLICABLE STANDARD

As this Court has previously explained,

[S]ection 1292(b), entitled "Interlocutory decisions", provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference in opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "Interlocutory appeals generally are disfavored, as piecemeal litigation 'undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation.' " *Doe I v. UPMC*, Civ. A. No. 2:20-CV-359, 2020 WL 5742685, at *2 (W.D. Pa. Sept. 25, 2020) (quoting *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 . . . (2009) (internal quotations omitted)).[1] "Certification pursuant to § 1292(b) should be granted 'sparingly' and only when three conditions are met: (1) where immediate appeal may avoid protracted and expensive litigation, (2) the request involves a controlling question of law, and (3) where there is a substantial basis for differing opinion." *J.L. v. Ambridge Area School District*, Civ. A. No. 06–1652, 2008 WL 906534, at *2 (W.D. Pa. Apr. 1, 2008) (citing *Milbert v. Bison Laboratories, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958); *Orson, Inc., v. Miramax Corp.*, 867 F. Supp. 319, 321 (E.D. Pa. 1994)).[2] The party seeking the interlocutory appeal has the burden to establish that all three conditions are met. *In re Norvergence, Inc.*, Civ. A. No. 08–1910, 2008 WL 5136706, at *2 (D. N.J. Dec. 5, 2008). However, this Court has discretion to deny an interlocutory appeal even if the party meets its burden. *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present.").

---

[1] As a unanimous Supreme Court explained long ago,

> Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause.

*Cobbledick v. United States*, 309 U.S. 323, 325 (1940).

[2] *See also Howard v. Arconic Inc.*, No. 2:17-CV-01057, 2022 WL 3021549, at *1 (W.D. Pa. July 29, 2022) ("District courts are not to lightly grant leave to seek such permission.").

2

*Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, No. CV 18-1129, 2021 WL 6098288, at *2 (W.D. Pa. Dec. 23, 2021).

### III. ANALYSIS

PNC posits three purported controlling questions of law as candidates for interlocutory appeal:

> 1. Whether, under Pennsylvania's implementation of Uniform Commercial Code (UCC) § 4A-207, a plaintiff must be in privity with the beneficiary's bank to seek a declaratory judgment that the bank is liable for damages?
>
> 2. Whether a Section 4A-207 claim is subject to dismissal under the "safe harbor" of Section 4A-207(b)(1) where a beneficiary's bank processes the inbound wire transfer at issue on an automated basis by account number?
>
> 3. Whether, under Pennsylvania law, a bank owes an affirmative duty of care to a noncustomer in connection with a non-party customer's account opening and withdrawal of funds?

(Docket No. 59 at 1-2). The Court will address the suitability for interlocutory review of each question, *seriatim*.

**1. Whether State Law Precludes Consideration of Plaintiff's Declaratory Judgment Claim?**

The Court finds that Question 1 does not meet any of the three statutory criteria for certification. As a threshold matter, it is far from clear that the Court's decision to entertain a claim for declaratory relief presents a question of law for purposes of § 1292(b), as that decision is entirely a matter of discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique

and substantial discretion in deciding whether to declare the rights of litigants.").[3] As "numerous courts have stated, . . . appeals cannot be maintained under § 1292(b) to test the propriety of a district judge's exercise of discretion." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 765 (3d Cir. 1974) (*en banc*) (Seitz, C.J., dissenting) (citing cases). Only where a discretionary decision involves a separate question of law is it potentially subject to interlocutory review. *See id.*

As to the statutory criteria:

First, in submitting its proposed Question 1, PNC in effect contends that the Court's decision to allow a declaratory claim was predicated on a negative resolution of the question whether "a plaintiff must be in privity with the beneficiary's bank to seek a declaratory judgment that the bank is liable for damages". However, this question misconstrues the Court's Order, because the Court explicitly declined to permit Plaintiff to seek a declaration of liability.[4] *See* Docket No. 46 at 26 n.41 ("Plaintiff will not be entitled to a declaration that PNC is liable to it for the sum demanded (at least under the UCC)."). Rather, the court allowed "a claim for a declaration that PNC had actual knowledge of a misdescription of the beneficiary at the time of the funds transfer, and that the payment order therefore could not be accepted." *Id.*

If Question 1 were to be recast to correspond to the Court's actual holding, the resulting question still would not be "controlling" for purposes of § 1292(b). Under Third Circuit precedent, controlling questions of law encompass legal rulings "which, if erroneous, would be reversible error on final appeal" or which are "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755 (3d Cir. 1974). *See also, e.g.*, *Brimar Transit*, 2021 WL 6098288,

---

[3] *See also id.* at 289 ("[T]he statute . . . vest[s] district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.")

[4] *Cf. Myers v. AutoZoners, LLC*, No. CV 18-760, 2019 WL 480467, at *1 (W.D. Pa. Feb. 7, 2019) ("This Court has the inherent authority to interpret its own orders.") (citing cases); *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 243 (3d Cir. 2013) ("We review a district court's interpretation of its own orders with deference.").

4

at *3; *Doe I*, 2020 WL 5742685, at *2.  In the present action, the Court's preliminary (and provisional)[5] decision to consider Plaintiff's claim for declaratory relief will necessarily be subsumed within – and rendered moot by – any subsequent decision either to grant or deny such relief.  Consequently, it is highly unlikely that the preliminary decision to hear the case (as opposed to the final dispositive order) will be subject to reversal following final appeal.  Moreover, the Court is confident that the mere pendency of a claim for declaratory relief will not seriously affect the conduct of the litigation, where direct claims for damages predicated on the same facts also remain pending.  Accordingly, PNC's question as to the propriety of hearing Plaintiff's declaratory judgment claim does not appear to be "controlling".

Second, PNC has not demonstrated any substantial ground for difference of opinion as to whether a federal court may hear a declaratory claim concerning a wire transfer in the absence of privity.  A "party's mere disagreement with the district court's ruling . . . is not a substantial ground for difference of opinion", and an "issue of first impression, by itself" is also "insufficient to establish this element." *Doe I*, 2020 WL 5742685, at *2.

PNC's Question 1 appears to be one of first impression; certainly PNC has not identified any case which imposes a privity requirement for declaratory relief.  Rather, PNC asserts that this Court's ruling "creates an apparent conflict with the reasoning" of decisions which hold that lack of privity bars a direct action for damages.  (Docket No. 60 at 16).  PNC gives this assertion short

---

[5] A federal court's decision to entertain a declaratory judgment claim is always provisional.  As the Supreme Court has explained:

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.  In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 288 (footnote omitted).

shrift, however: it does not explain how the reasoning may conflict and it makes no attempt to address this Court's contrary analysis. (Docket No. 46 at 25-27). Perhaps PNC's position is simply that a statutory interpretation barring a direct claim for damages must necessarily entail also barring declaratory relief, based on PNC's observation that a "declaratory judgment . . . would have similar operative effect" to an award of damages. (Docket No. 60 at 16). Of course, this observation is incorrect: a declaratory judgment is fundamentally different in operation from a money judgment, as it does not create a lien, cannot be collected, *etc*.

Most critically, regardless of its operative effect, a declaratory judgment differs from damages because it is a purely procedural remedy. Therefore, the availability of declaratory relief in a federal court is governed by federal law (including the Declaratory Judgment Act) rather than state law (such as the UCC). *See, e.g, Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 670 F. Supp. 424, 429 n.7 (D.D.C. 1987) ("[T]he Declaratory Judgment Act is procedural. As such, federal law determines whether a federal court may properly render a declaratory judgment. State substantive law addressing this subject is simply inapposite.") (citation omitted); *accord*, *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1092–93 (E.D. Pa.), *aff'd*, 37 F.3d 1485 (3d Cir. 1994); *Nationwide Mut. Ins. Co. v. Welker*, 792 F. Supp. 433, 439 (D. Md. 1992) ("That a state (procedural or substantive law) prohibits a declaratory judgment action within the state courts is simply inapposite.") (internal quotation marks omitted); *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978) ("The prohibition against declaratory judgments contained in the Oklahoma statute does not affect Farmers' suit in federal court."); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674 (1950) ("[T]hat the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial.").

In sum, in light of this authority, any proffered ground for difference of opinion on the maintainability of a declaratory judgment action should be couched in terms of federal law, as any implied preemption of such a remedy under state law (*i.e.*, the UCC) is "simply inapposite".[6] And PNC has not succeeded in marshalling any reason or authority that could serve as a substantial ground for difference of opinion with respect to its novel contention that state law requiring privity for a refund action should be deemed to circumscribe a federal court's procedural authority to declare the parties' rights as expressly authorized under federal law.

Third, PNC has failed to persuade the Court that immediate appeal may materially advance the ultimate termination of this litigation. The Court observes that Plaintiff's claim under UCC § 4A-207(b)(2) against FNB, and FNB's corresponding cross-claim against PNC, both turn on whether PNC had actual knowledge of a misdescription of the beneficiary at the time of the funds transfer, and whether the payment order therefore could not be accepted – *i.e.*, they turn on the very subjects of Plaintiff's declaratory judgment claim (as molded by the Court). (Docket No. 46 at 26 n.41). The same issues must therefore be addressed (through discovery, motions practice and trial, if appropriate) in order to resolve either or both of these substantial damages claims. Consequently, an interlocutory determination that Plaintiff's declaratory claim against PNC is preempted would have virtually no effect on the conduct or ultimate termination of this action. In particular, "an interlocutory appeal . . . would not: '(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *Brimar Transit*, 2021 WL 6098288, at *3, quoting *Doe I*, 2020 WL 5742685, at *3.[7]

---

[6] The Court notes that the federal Declaratory Judgment Act expressly authorizes courts to "declare the rights and other legal relations of *any interested party seeking such declaration*, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

[7] *Cf. Howard*, 2022 WL 3021549, at *2 (even where appellate disposition "might well alter the arc of the litigation" and "would likely . . . truncat[e] the scope of the action . . . and . . . be valuable . . . to the administration of the . . .

2.     **Whether a Bank's Asserted Automated Processing Precludes Liability for Wire Transfer Misdirection?**

PNC's Question 2 is manifestly not ripe for appeal. Simply stated, the Court's Order does not "involve" any question concerning the effect of PNC's asserted automated wire transfer processing because the factual predicate of automated processing is not alleged in the SAC and is thus *dehors* the record.[8] As the Court explained in response to PNC's assertion of the same issue in briefing on its motion to dismiss,

> [T]he precise nature of PNC's wire transfer process is not presently before the Court. *Cf. Hirt* [*v. Wells Fargo Bank, N.A.*, No. 4:20-CV-1616], 2021 WL 536514, at *2 [(S.D. Tex. Jan. 5, 2021)] ("The facts of the Complaint do not establish that the funds were deposited via an automated process and Defendant has not directed the Court to other information which could be considered at the motion to dismiss stage.").

(Docket No. 46 at 41 n.66). Section 1292(b) does not authorize the Court to certify for appeal a question which was not (and could not have been) involved in the order to be appealed.[9] *Cf. Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977) ("Section 1292(b) is not intended to grant the appellate courts power to give advice on speculative matters.").

---

case", those effects are present "in every complex, multi-claim civil case", and do not warrant certification where they are not "borne out . . . in such a compelling way that [they] overcome[] the strong presumption against piecemeal appeals").

[8] Plaintiff variously – and correctly – characterizes PNC's "conten[tion] that the wire transfer transaction at issue was 'automated' and that no human intervention occurred" as "unsupported", "premature", "speculative" and "without any factual basis" at this stage of litigation. (Docket No. 67 at 8). *See also* Docket No. 71 at 2.

[9] Even if PNC's automated processing were incontrovertibly established in the record, the Court would nevertheless be inclined to conclude that Question 2 is not an appropriate candidate for interlocutory review, due to the paucity of factual development concerning the state of PNC's knowledge (and dissemination thereof), and the burdens and benefits which should inform a determination of PNC's due diligence pursuant to UCC § 1-202(f). *See generally,* pp. 11-12, *infra*.

**3.     Whether a Bank Owes Any Duty to Non-Customers Foreseeably Endangered by Its Affirmative Conduct?**

The Court also finds that PNC's Question 3 does not meet any of the three statutory criteria for certification. First, Question 3 is not "controlling" for purposes of § 1292(b). Initially, the Court observes that (like Questions 1 and 2) Question 3 does not correspond to this Court's actual ruling. In denying PNC's motion to dismiss Plaintiff's common law negligence claim, the Court did not hold that banks owe a special "*affirmative*" duty to noncustomers in connection with account opening and withdrawals. Rather, the Court predicted that the Pennsylvania Supreme Court would likely decline to exempt banks from the general *negative* duty to refrain from affirmative conduct (including negligent account administration) that subjects others (including noncustomers) to unreasonable risk of harm. (Docket No. 46 at 67-73). As the Pennsylvania Supreme Court has explained, "[a]ffirmative duties . . . are the primary exception to the no-duty rule in rescue/protection scenarios where the defendant did not create the risk resulting in harm to the plaintiff". *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1246 (Pa. 2012). *See also Lance v. Wyeth*, 85 A.3d 434, 454 (Pa. 2014) (attempt to "scale back" existing common law duties presents "essentially, the flipside" of attempt to extend common law to "encompass a new, affirmative duty to third parties"). The question addressed by this Court involves PNC's claimed categorical exemption from the established common law duty to protect against created risk, rather than imposition of a new, "affirmative" duty as suggested by PNC's formulation of Question 3.[10]

Even if Question 3 were reframed in terms consistent with the Court's holding, it still would not be controlling, because the Court's application of Pennsylvania law was merely provisional. As the Court expressly noted, it "provisionally applied forum law . . . at the pleadings

---

[10] *See* n. 4, *supra*.

stage, pending development of a sufficient factual record for a choice of law determination." (Docket No. 46 at 22 n.34). The Court further noted that "the parties remain free to assert that a different state's law applies if warranted following development of an appropriate record". *Id*. at 22. Were it to transpire that Plaintiff's negligence claim is governed by the law of another jurisdiction, then this Court's ruling on a question of Pennsylvania law (however it may be framed) could not be controlling. The provisional ruling would simply fall by the wayside. It would not be subject to reversal on final appeal, and it would have no practical or legal effect on the remaining conduct of this litigation.

Second, PNC has not shown any substantial ground for difference of opinion as to whether Pennsylvania law categorically exempts banks from the general duty to refrain from conduct that subjects third parties to unreasonable risk. PNC argues that this requirement is satisfied by "the existence of divergent views as expressed by other courts," as "several courts applying Pennsylvania law have held that banks owe no duty of care to noncustomers that would support a tort claim for negligently permitting a nonparty customer to open an account or withdraw funds." (Docket No. 60 at 14, 17). However, as this Court carefully explained in its Opinion, the cases relied upon by PNC did not involve affirmative, foreseeably risk-creating conduct. (Docket No. 46 at 70-72). Those cases therefore do not constitute divergent authority on the question of whether such conduct on the part of a bank is exempt from the common law duty of care that would apply to other actors.[11] As the Pennsylvania Supreme Court concluded in a remarkably similar context, "the holdings of the decisions must be read against their facts". *Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 39 n.11 (Pa. 2014).[12]

---

[11] As FNB argues in its brief, because the decisions cited by PNC are "notably fact dependent", PNC has not "established a conflict in controlling legal authority". (Docket No. 66 at 2).

[12] *See also Lance*, 85 A.3d at 453 ("[A] bright-line, substantive rule of prohibition across broad classes of cases . . . is in tension with the nature of common-law lawmaking. . . . [I]t is axiomatic that the holding of a judicial decision is

In *Alderwoods*, the Court declined to limit an electric company's duty to inspection of its own equipment, where its affirmative conduct had foreseeably created increased risk. The Court found decisions recognizing such a limit to be inapplicable because they "were not focused on the presence of actual or constructive knowledge, on the part of utilities engaged in affirmative activities . . . , of an unreasonable risk of harm arising from their conduct." *Alderwoods*, 106 A.3d at 38. *See also id.* at 38 n.11 (noting that the decisions contained "no statement or developed reasoning . . . reflecting an informed, judicial holding that the . . . demarcation obviates the common-law duty to take reasonable measures to avert harm to others occasioned by one's own conduct in the face of actual or constructive knowledge of an unreasonable risk"). The no-duty decisions proffered by PNC are likewise inapposite herein, as the common law duty at issue is implicated by neither their facts nor their reasoning.

Third, it is unlikely that immediate appeal would materially advance the ultimate termination of this litigation. The Court observes that FNB has asserted a common law negligence claim against PNC arising out of the same conduct at issue in Plaintiff's claim. Even if Plaintiff's common law negligence claim were to be dismissed, that result would not necessarily terminate the claim of FNB (which stands in a different relationship vis-à-vis PNC). It appears that FNB's claim will necessitate the very same discovery, and similar motions practice (and trial, if warranted) as Plaintiff's claim. Moreover, substantially the same discovery as to account opening and all account administration prior to the funds transfer will be required in order to address Plaintiff's declaratory judgment claim against PNC, its UCC § 207(b) claim against FNB, and

---

to be read against its facts. This precept protects against an unintentional extension of governing principles beyond scenarios to which they rationally relate.") (citations omitted).

11

FNB's § 207(b) cross-claim against PNC. Consequently, an immediate appeal would not eliminate issues or trial, or otherwise substantially affect the conduct or ultimate termination of this action.[13]

Finally, even if the § 1292(b) criteria were satisfied with respect to Question 3, the Court would exercise its discretion to decline to certify that question, because the Court deems it manifestly unripe for appeal. The Pennsylvania Supreme Court has repeatedly held that when courts are called upon to make a broadly-applicable duty/no duty determination, they should do so on a fully-developed factual record; in the absence of which the Court has declined to adopt categorical exceptions to broadly-applicable duties. *See Alderwoods*, 106 A.3d at 40 ("treatment of these sorts of policy arguments [concerning immunity from common law duties] should be on a developed record, including empirical information, which would support an informed, legislative-type judgment"); *Lance*, 85 A.3d at 454 ("to support a judicial pronouncement of new, policy-based facets of substantive law, . . . litigants should . . . present the sort of record (including empirical information) which would support an informed, legislative-type judgment").[14]

In the present posture of the instant action, the record falls woefully short of what would be required for a "full and developed consideration of the landscape of the mixed policy considerations involved" by a reviewing court. *Alderwoods*, 106 A.3d at 39. In particular, the record is essentially devoid of facts concerning PNC's conduct in opening and administering the account at issue; its conformance or nonconformance to internal policies, government regulations and industry best practices; the degree of risk (to potential wire transferors) created thereby; the

---

[13] Plaintiff's position on this issue is in accord with the foregoing. (Docket No. 67 at 9, 10; Docket No. 71 at 4).

[14] *See also, e.g.*, *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Company*, 305 F.2d 605, 609 (5th Cir. 1962) ("[I]n these matters of such public importance, it is often an unsure thing to elucidate decisions of like import in the unavoidably academic atmosphere of mere pleadings or even a stipulated agreed statement in terms of what the lawyers conceive the problem to be, rather than what the nuances of the facts make it out to be.").

foreseeability of such risk; and the burden and efficacy of available protective measures. *Cf. Katz*, 496 F.2d at 754 ("leave to appeal may be denied for entirely unrelated reasons such as . . . the desire to have a full record before considering the disputed legal issue").

In view of its assessment of the statutory criteria as explicated above, and the near-complete absence of a contextual record, this Court declines to certify Question 3 for interlocutory appeal.

## IV.  CONCLUSION

For the reasons set forth herein, PNC's motion is DENIED.  An appropriate Order follows.

    */s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  November 18, 2024

cc/ecf:  All counsel of record